J-S26009-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MATTHEW E. CHAPMAN | : | |
| | : | |
| Appellant | : | No. 1247 MDA 2025 |

Appeal from the Judgment of Sentence Entered April 3, 2025
In the Court of Common Pleas of Bradford County
Criminal Division at No(s): CP-08-CR-0000001-2023

BEFORE: PANELLA, P.J.E., NICHOLS, J., and NEUMAN, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED: AUGUST 13, 2026**

Matthew E. Chapman appeals from the judgment of sentence entered in the Court of Common Pleas of Bradford County after a jury convicted him of one count of indecent assault of a person less than thirteen years of age, two counts of indecent assault of a person less than sixteen years of age, and one count of corruption of minors.[1] On appeal, Chapman challenges the weight of the evidence. After careful review, we affirm.

We glean the following from the certified record.[2] Victim, Chapman's niece, alleged that Chapman sexually assaulted her on four different occasions

---

[1] 18 Pa.C.S.A. §§ 3126(a)(7), 3126(a)(8), and 6301(a)(1)(ii), respectively.

[2] Chapman's initial trial, which was held on May 8, 2024, resulted in a hung jury. The following evidence was adduced at Chapman's second trial, which took place on December 3, 2024.

at her grandparents' home in Sayre, where Chapman also periodically resided, when she was between the ages of ten and fifteen. At trial, Victim testified that the first incident occurred in 2017 when she was approximately ten years old and spending the night with her grandparents. *See* N.T. Trial A.M. Session, 12/3/24, at 30. When asked to describe the incident, Victim testified to the following:

> First time that he did it, I was in the bedroom across from the bathroom—and it was the middle of the night—and he came in and started touching me. I woke up to him with his hand up my shirt. And then he put his hand down my pants, and told me if I told anyone, that he'd kill me, and I was ... and that I was a whore, and that I should just kill myself.

*Id.* Victim indicated that this incident lasted approximately ten minutes and that she "[f]elt like [she] couldn't move." *Id.* at 32. Victim did not tell anyone about this incident after it occurred. *See id.*

Victim testified that the second incident occurred in the summer of 2021 when she was visiting her grandparents:

> The second time, we had just gotten there, and I had ... thrown up [] because I get carsick. So, I went to lay down on the couch, and when I woke up, same thing—he was standing over top of me with his hand up my shirt.

*Id.* at 34-35. When asked what Chapman was doing with his hands, Victim stated that he was "[p]laying with [her] breasts." *Id.* at 39. Victim indicated that this incident lasted between ten and fifteen minutes and that she did not inform anyone of what had occurred. *See id.*

When asked to describe the third incident, Victim testified to the following:

> Same exact thing. Went up there for a day trip. Went to take a nap. Woke up on the couch—[the] same couch—with his hand up my shirt, doing the exact same thing.

*Id.* Victim testified that in February of 2022, she disclosed the abuse for the first time to her sister and her sister's friend in the car on the way back from a school dance. *See id.* at 42. Victim testified that her sister encouraged her to tell their mother, but Victim did not disclose the abuse at that time. *See id.*

Victim testified that the fourth incident, which lasted approximately five to ten minutes, occurred in March of 2022, following her great-grandfather's funeral:

> [A]fter we had gotten back from the funeral, everybody had gone downtown to my mom's Grammy's house. And I had stayed behind because I didn't feel like being in the car any longer. So, I [] went to sleep on the couch—no one around. Woke up with him standing over top of me with his hand up my shirt—once again.

*Id.* at 40, 42. Victim testified that following this incident she did not immediately inform anyone of what occurred, but, once her parents returned from her great-grandmother's house, Victim asked if they could return to their home in Williamsport. *See id.* at 41. Victim testified that she eventually disclosed the abuse to her mother in the summer of 2022 because she could no longer tolerate the "flashbacks" or "nightmares" and "something needed to be … done about it." *Id.* at 43. Victim testified that she eventually confronted

Chapman on Facebook Messenger "to get some peace of mind[,]" *id.* at 45, 46-49, and in response, Chapman vehemently denied the allegations. *See id.* at 49-50. Victim indicated that following this exchange, CYS reported to Victim's home, and Victim formally disclosed the four incidents of abuse. *See id.* at 50-51.

Victim's sister testified that Victim first informed her of the abuse in February of 2022, when she was driving her friend,[3] her boyfriend, and Victim back from formal. *See id.* at 93, 94. Victim's sister further indicated that she was shocked by the revelation and that Victim did not provide much detail at the time. *See id.* at 93. Victim's sister testified that she did not inform anyone of the abuse because she "felt as though [Victim] needed to do it on her own terms[,]" and she encouraged Victim to tell their mother. *Id.* at 94. Victim's sister testified that she could not specifically recall where the family gathered following her great-grandfather's funeral, and she indicated that she knew where Victim was "most of the day." *Id.* at 105, 103.

Laura Quick of Lycoming County CYS testified that she visited Victim's home on October 5, 2022, after CYS received a report of abuse. *See id.* at 111. Quick testified that, during this visit, Victim disclosed that her uncle had touched her inappropriately on four occasions, with the first incident occurring

_____

[3] When called to testify, Victim's sister's friend confirmed that Victim had disclosed the abuse during the car ride home from winter formal. *See id.* at 129.

when she was ten years old, the second and third incidents occurring in the summer of 2021, and the fourth incident occurring in the summer of 2022. *See id.* at 112.

Affiant Cody Scepaniak of the Pennsylvania State Police Department's Criminal Investigation Unit indicated that he became involved in the matter in October of 2022 and observed Victim's forensic interview. *See id.* at 118. Trooper Scepaniak testified that he interviewed Chapman, who was "adamant that none of these allegations were true." *Id.* at 119. Trooper Scepaniak further indicated that during his interview, Chapman confirmed that he was living with his parents in the summer of 2021. *See id.* at 120.

Chapman called his parents, Stephanie and Kevin Chapman, to testify in his defense. Stephanie testified that, following her father-in-law's funeral, Chapman did not return to her house until the evening, and at no point were Chapman and Victim alone in her house. *See* N.T. Trial P.M. Session, 12/3/24, at 17, 21. Kevin testified that, after his father's funeral, only he, Stephanie, and his grandson returned to his house for an extended period. *See id.* at 34-35. Both Stephanie and Kevin maintained that Victim fabricated the allegations against Chapman. *See id.* at 19, 32.

Chapman testified in his own defense and denied ever touching Victim or living with his parents for an extended period of time prior to 2022. *See id.* at 39-41, 43. Chapman further denied ever staying overnight at his

parents' house in 2017 or being alone with Victim at his parents' house on the day of his grandfather's funeral. *See id.* at 44, 45.

On December 3, 2024, the jury found Chapman guilty of the above offenses.[4] On April 3, 2025, the court imposed an aggregate sentence of fifteen months to seven years of imprisonment, followed by three years of probation. Chapman timely filed a post-sentence motion challenging the weight and sufficiency of the evidence, which the trial court denied by the order and opinion entered on August 22, 2025, upon consideration of the briefs filed by both parties. Chaman timely filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). On November 13, 2025, the trial court issued a statement in lieu of filing an opinion pursuant to Pa.R.A.P. 1925(a), in which it suggests that Chapman's judgment of sentence should be affirmed based on the reasons set forth in its August 22, 2025 opinion.

On appeal, Chapman presents the following question for our review:

> Did the trial court err and abuse its discretion by denying [Chapman's] post-sentence motion [in which he alleged] that the judgment of sentence was against the weight of the evidence, given the lack of credibility and consistency of [Victim's] testimony?

Appellant's Brief, at 5 (unnecessary capitalization omitted).

Chapman presents a challenge to the weight of the evidence.

_____

[4] Chapman was acquitted of one count of indecent assault of a person less than sixteen.

Appellate review of a weight claim is a review of the exercise of the trial court's discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial court had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial court when reviewing a trial court's determination that the verdict is, or is not, against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the trial court's conviction that the verdict was, or was not, against the weight of the evidence and that a new trial should be granted in the interest of justice. A trial court abuses its discretion where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill-will. By comparison, the role of the trial court is to determine whether, notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice. For an appellant to prevail on a weight of the evidence claim, the evidence must be so tenuous, vague, and uncertain that the verdict shocks the conscience of the trial court.

*Commonwealth v. Smith*, 351 A.3d 1245, 1252-53 (Pa. Super. 2026) (brackets, citations, and quotation marks omitted). Notably, "a weight challenge predicated on the credibility of trial testimony is generally not cognizable on appellate review." *Commonwealth v. Hernandez*, --- A.3d ----, 2026 WL 1342157 at *5 (Pa. Super. filed May 14, 2026) (internal quotation marks and citation omitted).

Chapman avers that his judgment of sentence was against the weight of the evidence and "should have shocked the conscience of the trial court," thereby requiring a new trial, "given the unreliable and inconsistent nature of [Victim's] testimony." Appellant's Brief, at 9. To support his claim, Chapman relies on an inconsistency in Victim's trial testimony that was highlighted by

defense counsel on cross-examination. *See id.* at 12-13. Specifically, with respect to the first incident of abuse, counsel emphasized that, at the June 14, 2023 preliminary hearing, Victim indicated that Chapman's physical contact was limited to touching Victim's breasts, while Victim testified at trial that Chapman had also put his hands down her pants. *See* N.T. Trial A.M. Session, 12/3/24, at 56-59; N.T. Preliminary Hearing, 6/14/23, at 6-7. Chapman further avers that Victim's sister's testimony that, on the day of their great-grandfather's funeral, she and Victim "were in close constant contact" and that she "did not recall any sort of luncheon that was attended" by the family following the funeral, "calls into question the notion that [Chapman] had an opportunity alone with [Victim] to commit such heinous acts" and "showcases the inaccuracy and lack of credibility that [Victim's] testimony provides." Appellant's Brief, at 13.

In denying Chapman's motion for a new trial based upon his weight of the evidence claim, the trial court explained as follows:

> There is no doubt that [Victim's] testimony was inconsistent and without much detail, but ... the inconsistencies were highlighted for the jury by [defense] counsel. [Victim], despite having to give sworn testimony on multiple occasions throughout the prosecution of the case, including at the first trial, was consistent and credible enough to support the jury's verdict.
>
> While it is true [Chapman] testified and denied the allegations, it was the jury's duty to determine whose testimony to believe. The jury was correctly instructed that they "are the sole judges of the credibility of the witnesses and their testimony," and that they are to "judge the truthfulness and accuracy of each [witness's] testimony and decide whether to believe all or part or none of that testimony." [N.T. Trial P.M. Session, 12/3/24, at 74.]

The jury was given factors to assist them with their assessment of the testimony and were advised what they could do if they determined "a witness deliberately testified falsely about a material point." [*Id.* at 75.] The jury was instructed that it is not uncommon for a witness to be innocently mistaken in their recollection" and that "the testimony of [Victim] standing alone, if believed by you, is sufficient proof upon which to find the defendant guilty in this case." [*Id.* at 75, 76.] In other words, the jury was instructed that they "may find the defendant guilty if the testimony of [Victim] convinces [them] beyond a reasonable doubt that the defendant is guilty." [*Id.* at 76.]

Advised of their obligation, the jury found [Chapman] guilty of three of the four alleged assaults. ... [T]he evidence supports the jury's verdict, which was not against the weight of the evidence.

Trial Court Opinion, 8/22/25, at 3-4 (some citations and brackets omitted).

We discern no abuse of discretion in the trial court's determination that the verdict was not against the weight of the evidence. *See Smith*, 351 A.3d at 1252. Specifically, Chapman has failed to establish how the trial court, in rejecting his weight claim, failed to apply the law or reached a decision that was manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will. *See id.* at 1253. Rather, Chapman impermissibly "invites this Court to do nothing more than alter the result reached by the fact-finder by reassessing witness credibility and reweighing the evidence presented at trial, which the trial court, based upon its observations, found worthy of belief." *Id.* at 1254. Accordingly, Chapman's weight challenge fails, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 08/13/2026